SCOTT M. LOWRY, CA Bar No. 244504
Scott@LawLB.com
STUART O. LOWRY CA Bar No. 80336
Stuart@LawLB.com
LOWRY BLIXSETH LLP
23632 Calabasas Road, Suite 201
Calabasas, California 91302
Tel. 818-584-6460
Fax. 818-574-6026

CHRIS KAO, CA Bar No. 227086
ckao@kaoandswope.com
RICHARD SWOPE, CA Bar No. 233200
rswope@kaoandswope.com
KAO & SWOPE LLP
115 Sansome Street, Suite 1204
San Francisco, CA 94104
Tel. 415.539.0996
Fax. 866.267.0243

Attorneys for Plaintiff: By The Glass, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BY THE GLASS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>FRANMARA, INC., a California Corporation; and DOES 1-10,<br><br>Defendants. | Case No.:3:13-CV-00879-LHK<br><br>**DECLARATION OF SCOTT M. LOWRY** |

I, Scott M. Lowry, hereby declare and represent the following:

1. I am a member of the Bar of the State of California, I am admitted to practice before the United States District Court for the Northern District of California, and I am a

1

1. partner of the law firm of Lowry Blixseth LLP, whose address, telephone number, etc. are indicated above.

2. My law firm and I are lead counsel of record in this civil action for Plaintiff By The Glass, LLC (hereinafter "BTG").

3. This Declaration is made on my personal knowledge and if called upon to do so, I could and would give competent testimony to the matters stated in my Declaration.

4. I have reviewed the Affidavits submitted to the court on June 24, 2013 by Robert W. Payne (hereinafter "Payne Aff.") and Frank Pat Chiorazzi (hereinafter "Chiorazzi Aff.") pursuant to Court Order. I submit this Declaration to clarify certain misrepresentations in those Affidavits and to provide critical context for quotes that are otherwise misleading.

**Dispute that Mr. Payne "re-assured" BTG's counsel "[e]arly on in this litigation" that Defendant changed the product packaging and trademark.**

5. I dispute Mr. Payne's testimony that "Early on in this litigation, we *reassured* opposing counsel in writing that we had chang*ed* use regarding two of the three perceived areas of dispute, the product packaging and trademark with Defendant's stemless wine glass production." (emphasis added).

6. Although BTG attempted to resolve this dispute without litigation, BTG was ultimately left with no choice but to file the Complaint in this matter on February 27, 2013.

7. In response to Plaintiff's notice that it would seek emergency relief in the form of a Temporary Restraining Order ("TRO") on February 28, 2013, Mr. Payne sent an email to only Stuart Lowry stating that Defendant was prepared to provide "*some* assurances, *conditioned* upon committing to agree not to seek a temporary restraining order in this action". (emphasis added). A true and correct copy of the email sent to Stuart Lowry and forwarded to me is shown as attached "Exhibit A" (2 pages).

8. In this email, Defendant did not agree to "stop" the infringing activity. In fact, Mr. Payne refused to provide any such assurances without first requiring our confirmation that we would not file a TRO. In the spirit of cooperation, I provided such on March 1, 2013. A true and correct copy of my confirmation is shown as attached "Exhibit B" (2 pages).

2

9. Mr. Payne's March 1, 2013 response provided NO definitive commitments to cease and desist use of the infringing mark, product packaging or the PrestoVino product. Rather, Mr. Payne stated only that Defendant "plans to *transition* to another mark and packaging for its stemless glassware. In the near future (probably early next week) we would expect to show you the intended mark and packaging." (emphasis added). A true and exact copy of this email is shown as attached "Exhibit C" (4 pages).

10. Mr. Payne's statements were inherently vague and non-specific by using words such as "plans", "probably" and "expect". Again, Mr. Payne provided no definitive timeline or guarantee that the mark or product packaging would change.

11. On March 12, 2013, I received a settlement proposal letter from Mr. Payne, a true and correct copy of which is shown as attached "Exhibit D" (2 pages).

12. In the March 12, 2013 letter, Mr. Payne stated only that Defendant would "*suspend* any shipments of product under the accused packaging". (emphasis added). Mr. Payne did not state that Defendant would "stop" shipments of the infringing product or the accused product packaging.

**Mr. Payne's indication Defendants are continuing to sell glassware bearing the PrestoVino mark.**

13. In the March 12, 2013 letter, Mr. Payne stated that "current inventory of the glassware sold in the U.S. will have a sticker on the bottom which completely blocks from view the stamped mark PrestoVino." The "PrestoVino" mark is permanently stamped into the glass and still legibly visible through the glass base, while a "sticker" is a temporary covering. Thus, by way of this March 12, 2013 letter, Defendant conveyed its intent to continue selling "glassware" bearing the "PrestoVino" mark.

**Defendant's representation to the USPTO that glasses stamped with "PrestoVino" were being sold as of March 12, 2013.**

14. Further to the point that Defendant continued to sell glasses stamped with "PrestoVino", Defendant filed a use-based trademark application for the mark "PRESTOFLEX" with the U.S. Patent and Trademark Office on March 12, 2013, under Appl.

1  No. 85/873,818.  In support of its use, Defendant filed a specimen of the PrestoVino glass with
2  the permanently stamped "PrestoVino" mark covered on its bottom with a sticker.  A true and
3  correct copy of the specimen filed with the Trademark Office is shown as attached "Exhibit E"
4  (3 pages).  Thus, Defendant declared under the penalty of perjury to the Trademark Office that
5  the "PrestoVino" glasses were being sold in commerce.
6        15.    Contrary to Defendant's contentions, Plaintiff has every reason to believe that
7  the "PrestoVino" mark is still being sold in commerce.

**Defendant's attempt to further hijack BTG'S goodwill and confuse customers with its proposed "re-design".**

10        16.    In my reply to Mr. Payne dated March 28, 2013, I stated that "Franmara must
11  permanently discontinue all manufacturing, shipping, selling, distributing, etc. of the current
12  product packaging."  A true and correct copy of this email is shown as attached "Exhibit F" (5
13  pages).
14        17.    Furthermore, in my March 28, 2013 reply, with respect to the proposed product
15  packaging, I told Defendant that Plaintiff "has already received significant publicity to images
16  of nearly identical depiction".  Defendant's intent to use such a depiction was received as
17  further intent to ride the goodwill and publicity derived from Plaintiff's largely popular and
18  well-known products.  A comparison of the picture on Defendant's proposed product
19  packaging and the picture from a San Francisco Chronicle spotlighting Plaintiff's GOVINO®
20  glass are attached as shown in "Exhibit G" (1 page).
21        18.    In Mr. Payne's April 1, 2013 response to my March 28, 2013 email, he stated
22  that "Franmara has discontinued the product packaging on which the suit was brought . . . ."
23  Mr. Payne refused to address the intellectual property rights in the photograph copied from the
24  San Francisco Chronicle article and only indicated that the photograph would be changed.  A
25  true and correct copy of this response is shown as attached "Exhibit H" (6 pages).
26        19.    Defendant first notified Plaintiff of the revised version of the product package
27  after normal business hours on the eve before the Joint Case Management Conference
28  Statement was due on June 12, 2013 – more than 10 weeks later.

20. In his Affidavit, Mr. Payne does not state (a) that Defendant is no longer selling products with the Prestovino mark and packaging; (b) the date Defendant commenced selling Prestovino products; (c) the date Defendant stopped selling Prestovino products; (d) information regarding the manufacturing and inventory of Prestovino products; or (e) information regarding the manufacturing and inventory of legacy products in accordance with the Court's June 19, 2013 Order. Rather, Mr. Payne's Affidavit only references his other written representations to Plaintiff's counsel during the course of this lawsuit.

**Mr. Chiorazzi's suggestion that Defendant continues to manufacture the infringing wine glass with "PrestoVino" permanently stamped into the bottom.**

21. Mr. Chiorazzi states that "[t]he *wine glass design has **not** been changed* . . . ." Chiorazzi Aff. ¶ 5 (emphasis added). The infringing PrestoVino wine glass includes a permanently stamped "PrestoVino" mark on the bottom. Either Mr. Chiorazzi's statement that the "wine glass design has not been changed" is false, or Mr. Chiorazzi and Franmara continue to manufacture the infringing wine glass with "PrestoVino" permanently marked on the bottom.

22. Moreover, Mr. Chiorazzi states that "[t]o the extent the glasses are marked for sale in the U.S., they have either been marked with the PRESTO FLEX mark or will be." Chiorazzi Aff. ¶ 5. To the extent that the glasses "have . . . been marked with the PRESTO FLEX mark" by way of merely covering the permanently stamped impression of PrestoVino on the bottom of the glass inventory, the PrestoVino mark is still being sold in commerce, consistent with Mr. Payne's March 12, 2013 letter and Defendant's trademark application filing, and contrary to Mr. Chiorazzi's Affidavit.

**Mr. Chiorazzi's failure to provide manufacturing and inventory information of PrestoVino products.**

23. Mr. Chiorazzi's Affidavit provides NO information regarding the manufacturing and inventory of Prestovino products. Mr. Chiorazzi's Affidavit also provides NO information regarding the manufacturing and inventory of legacy products. To this extent, Defendant failed to comply with the Court's June 19, 2013 Order.

24. Mr. Chiorazzi is skirting the Court's Order by failing to disclose to the Court the true details of his statements his Affidavit, and especially paragraphs 4 and 5. Mr. Chiorazzi's Affidavit is also inherently vague and non-specific and provides no useful information regarding the "manufacturing and inventory of Prestovino products and legacy products".

25. Lastly, Mr. Payne's and Mr. Chiorazzi's Affidavits do not provide the type of manufacturing and inventory information requested by the Court Order to enable Plaintiff to determine with any more certainty the scope of the potential damage to the GOVINO® brand, all in the spirit of quickly reaching a good faith settlement.

26. Thus, Defendant has apparently failed to comply with the Minute and Case Management Order dated June 19, 2013.

I declare under the penalty of perjury that the foregoing facts are true and correct.

Executed on June 26, 2013, at Calabasas, California.

By: _____
Scott M. Lowry, Esq.